UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**RYAN M. REDMOND,**

        **Plaintiff,**

        v.                                Case No. 12-C-587

**SIRIUS INTERNATIONAL INSURANCE CORP.,**

        **Defendant.**

## ORDER ON THE PLAINTIFF'S MOTION TO STRIKE AND THE DEFENDANT'S MOTION TO TRANSFER

**I. PROCEDURAL HISTORY**

The present action was initially filed by Ryan M. Redmond ("Redmond") in Waukesha County Circuit Court on May 14, 2012 but was removed to this court on June 8, 2012. (Docket No. 1.) On June 14, 2012, the defendant, Sirius International Insurance Corporation ("Sirius"), filed its answer and counterclaim, (Docket No. 5), and a motion to transfer this action to the Southern District of Indiana, (Docket No. 6). In early July, the plaintiff filed a motion seeking to strike the defendant's answer, counterclaim, and motion to transfer, (Docket No. 10), a motion seeking the defendant be ordered to post a bond, (Docket No. 10), a response to the defendant's motion to transfer, (Docket No. 13), and an answer to the defendant's counterclaim, (Docket No. 12). On July 12, 2012, Sirius responded to Redmond's motions to strike and to post bond, (Docket No. 17), and replied in support of its motion to transfer, (Docket No. 18). On July 16, 2012, the court entered an order permitting the plaintiff to file a sur-reply to the defendant's motion to transfer. Redmond subsequently replied in support of his motions to strike and to have the defendant post bond (albeit

four days late and without any explanation for its tardiness), (Docket No. 21), and submitted a sur-reply regarding the defendant's motion to transfer, (Docket No. 20). All parties have consented to the full jurisdiction of a magistrate judge. (Docket Nos. 9, 16.)

**II. FACTS**

Redmond had been insured by Sirius since October 2006, and on August 25, 2010 he electronically submitted a form to renew his travel medical insurance for the period October 20, 2010 to October 20, 2011. (Docket No. 14, ¶¶3-5.) At this time, Redmond avers he was residing at his mother's home in Delafield, Wisconsin. (Docket No. 14, ¶9.) He listed this as his residence on the renewal form and as the billing address for the credit card he used to pay the premium. (Docket No. 7-1.) This application was processed by Community Insurance Agency, Inc. ("Community") in Northbrook, Illinois. (Docket No. 7-5, ¶¶3-5.) The application was then forwarded to International Medical Group, Inc. ("IMG"), which is the managing general underwriter and plan administrator for Sirius. (Docket No. 7-5, ¶5.) Community received the policy from IMG on August 27, 2010, and it is Community's practice to mail the policy to the insured that same day or, if necessary, the next day. (Docket No. 7-1, ¶¶6-7.)

On August 29, 2010, Redmond left his mother's home in Delafield, Wisconsin and drove to Brattleboro, Vermont where he attended orientation classes on August 31, 2010 for the master's degree program in international management at the School of International Training. (Docket No. 14, ¶10.) Redmond attended the School of International Training for the 2010-2011 academic year. (Docket No. 14, ¶11.) Redmond listed a Vermont address as his "mail forwarding address" on the renewal application and as his mailing address on the "annual statement of residency intent" included with the renewal application. (Docket No. 7-1.) When classes ended on May 20, 2011, he returned to Wisconsin. (Docket No. 14, ¶11.)

On July 2, 2011, Redmond was severely injured in Grand Teton National Park in Wyoming. (Docket No. 1-1, ¶24.) He was initially treated at the Eastern Idaho Regional Medical Center in Idaho, and on July 26, 2011, he was transferred to Sacred Heart Rehabilitation Institute in Milwaukee, Wisconsin. (Docket No. 1-1, ¶26.) He remained at Sacred Heart's Coma Recovery Program until September 14, 2011. (Docket No. 1-1, ¶26.) Redmond sought coverage totaling nearly $600,000.00 from Sirius, which Sirius denied. (Docket No. 1-1, ¶¶28-36.) This action followed.

**III. MOTION TO STRIKE**

The court must first assess whether Sirius has properly appeared in this action. Under Wisconsin law, an insurer that is not authorized to do business in Wisconsin generally must post a bond before filing any pleadings in a court action. Wis. Stat. § 618.47. There is no dispute that Sirius is not authorized to do business in Wisconsin. In Redmond's view, the court should strike all of Sirius' filings in this action and order it to post a $2 million bond before allowing this matter to proceed.

Sirius responds that it is not required to post bond in this action because under Wis. Stat. §§ 631.01, 600.01, and 618.42, the policy at issue was exempt from Wisconsin's bond requirement since it was procured directly from an out-of-state insurer. (Docket No. 17 at 5-6.) Alternatively, it contends that the bond requirement does not apply because it is limited to instances where substitute service is accomplished through service upon Wisconsin's Commissioner of Insurance and this form of service was not utilized in this action. (Docket No. 17 at 6-7.) Finally, Sirius contends that even if it is not exempt under Wis. Stat. § 618.47, the court should waive the bond requirement, as is authorized under Wis. Stat. § 618.47(1)(a), because it has sufficient available funds to satisfy any final judgment in this action. Sirius also makes passing reference to Magistrate Judge Crocker's Report and Recommendation in <u>Scottish Guar. Ins. Co. v. Dwyer</u>, 1992 U.S. Dist. LEXIS 22894,

3

*34-*35 (W.D. Wis. Nov. 2, 1992) (recommendation adopted at 1992 U.S. Dist. LEXIS 22893 (W.D. Wis. Nov. 24, 1992) (Crabb, J.) (noting that denial of motion to post bond was not objected to)), wherein Judge Crocker concluded that the bond requirement in Wis. Stat. § 618.47 did not apply in federal court. (Docket No. 17 at 9.) This argument is undeveloped in Sirius' brief and therefore the court shall not consider it further.

The plaintiff acknowledges the defendant's contention that by operation of Wis. Stat. § 631.01(1), Wisconsin's bond requirement for unauthorized insurers, Wis. Stat. § 618.47, does not apply to insurance directly procured from an insurer provided "no agent or broker resident or doing business in this state is involved and if negotiations occur primarily outside this state." Wis. Stat. § 618.42(1). Rather, the plaintiff contends that the direct insurance statute, Wis. Stat. § 618.42(1), does not apply here because negotiations occurred within Wisconsin.

> Wis. Stat. § 631.01(1) states:
>
> (1) GENERAL.
>
> This chapter and ch. 632 apply to all insurance policies and group certificates delivered or issued for delivery in this state, on property ordinarily located in this state, on persons residing in this state when the policy or group certificate is issued, or on business operations in this state, except:
>
> (a) As provided in ss. 600.01 and 618.42;
>
> (b) On business operations in this state if the contract is negotiated outside this state and if the operations in this state are incidental or subordinate to operations outside this state, unless the contract is for a policy of insurance to cover a warranty, as defined in s. 100.205 (1) (g), in which case the provisions set forth in sub. (4m) apply; and
>
> (c) As otherwise provided in the statutes.

Wis. Stat. § 631.01

First, with respect to the question of whether Sirius is required to post bond, Wis. Stat. § 631.01(1)(a) is not relevant. Irrespective of whether the policy at issue here was directly procured in accordance with Wis. Stat. § 618.42(1), any exception from Wisconsin law would apply, at most,

4

to Chapters 631 and 632. The bond requirement is found in Chapter 618, specifically Wis. Stat. § 618.47, and thus it is not impacted by Wis. Stat. § 631.01(1)(a). See Stone v. Seeber, 155 Wis. 2d 275, 283, 455 N.W.2d 627, 631 (Ct. App. 1990).

Nonetheless, the question of whether the policy was directly procured from an out-of-state insurer is relevant under Wis. Stat. § 600.01(1)(b)(6), which exempts "[t]ransactions directly procured through negotiations under s. 618.42 . . ." from Chapters 600 to 646. Wis. Stat. § 618.42 states, in relevant part:

> (1) Subject to the restrictions of this section, any person seeking insurance may obtain it if no agent or broker resident or doing business in this state is involved and if negotiations occur primarily outside this state. Negotiations by mail occur within this state if a letter is sent from or to an address in this state.

The record before this court is devoid of any indication that the relevant insurance policy was the product of any "negotiation" between the parties, at least under the popular connotation of that term. From the facts presented to the court, this was a "take-it-or-leave-it" offer without any evidence of negotiation. In the absence of any evidence of negotiations, then necessarily negotiations could not have "occur[red] primarily outside this state." But Black's Law Dictionary defines "negotiate" as, "to communicate with another party for the purpose of reaching an understanding." Black's Law Dictionary (9th ed. 2009). Under this definition, the mere offer and acceptance of even a "take-it-or-leave-it" contract may constitute the requisite "negotiation" under Wis. Stat. § 618.42. Whether this was the meaning intended by the legislature is a question the court need not resolve because the record is similarly clear that Redmond was within Wisconsin when he accepted Sirius' insurance offer. Therefore, the narrow exception from Wisconsin law for direct procurement of insurance from an out-of-state insurer, Wis. Stat. § 618.42, does not apply in the present case.

The court turns next to the question of whether the bond requirement is limited to instances where substitute service is accomplished through service upon Wisconsin's Commissioner of

5

Insurance. Wis. Stat. § 618.47 is titled "Defense of action by unauthorized person" and states in its entirety:

(1) CONDITIONS FOR FILING.

No pleading, notice, order or process in any court action or in any administrative proceeding before the commissioner instituted against an unauthorized person under ss. 601.72 or 601.73 may be filed by or on behalf of the unauthorized person unless the person either:

(a) Deposits with the clerk of the court in which the action or proceeding is pending, or with the commissioner in administrative proceedings before the commissioner, bond with sureties in an amount fixed by the court or the commissioner, sufficient to secure the payment of any probable final judgment or order. The court, or the commissioner in administrative proceedings before the commissioner, may make an order dispensing with a deposit or bond where the person makes a satisfactory showing that in a state of the United States he or she maintains funds or securities, in trust or otherwise, sufficient and available to satisfy any probable final judgment or order; or

(b) Procures proper authorization to do an insurance business in this state.

(2) POSTPONEMENT.

The court in any such action or proceeding, or the commissioner in any administrative proceeding before the commissioner, may order any postponement necessary to afford the unauthorized person reasonable opportunity to comply with sub. (1)

(3) EXCEPTION.

Subsection (1) does not prevent an unauthorized person from filing a motion to quash a writ or to set aside service on the ground that he or she has not done an insurance business in this state.

Wis. Stat. § 601.72 authorizes the Wisconsin's Commissioner of Insurance to receive process on behalf of unauthorized insurers, and Wis. Stat. § 601.73 outlines the manner for executing such service. However, subsection (5) of Wis. Stat. § 601.72 states: "The right to substituted service under this section does not limit the right to serve summons, notice, orders, pleadings, demands or other process upon any person in any manner provided by law."

If the court was to accept Sirius' reading of Wis. Stat. § 618.47(1), utilization of substitute service under Wis. Stat. § 601.72 *would* effectively limit the right to use alternative means of service by removing the bond requirement when such service was used. The posting of bond acts as an important means of protecting policy holders. Thus, in the absence of Sirius presenting any case law to the contrary, the court reads Wis. Stat. § 618.47(1) more broadly to encompass any action instituted in conformity with Wis. Stat. §§ 601.72 and 601.73, which under Wis. Stat. § 601.72(5) includes service "in any manner provided by law."

Finally, the court turns to the question of whether the bond requirement should be waived. The record before this court suggests that Sirius "maintains funds or securities in trust or otherwise, sufficient and available to satisfy any probable final judgment or order" in this action, Wis. Stat. § 618.47(1)(a). The plaintiff has submitted details from Sirius' corporate website indicating it is the largest reinsurance company in Scandinavia, has $1.8 billion in regulatory capital, and is rated "A" by A.M. Best, A3 by Moody's, and "A-" by Standard & Poor. (Docket No. 11-1; see also Docket Nos. 17-9 (A.M. Best rating), 17-11). Sirius' 2011 annual report, (Docket No. 17-10), reveals a company that successfully weathered significant losses due to global events (e.g. $79 million as a result of the Japanese earthquake and tsunami; $44 million from New Zealand earthquake; $34 million from Thai flooding) but yet remained profitable. It further states that it maintains a trust account in New York with Citibank, N.A. for the benefit of Sirius' American policyholders, and as of June 30, 2012, this trust fund contains assets in excess of $16 million. (Docket No. 17-12, ¶4.)

Based upon the financial information provided, notwithstanding Redmond's observation that the trust documents may exclude payment for punitive damages or damages resulting from Redmond's bad faith claim, or other concerns about the trust, (Docket No. 21 at 15) (but see (Docket No. 17-12, ¶8) (affidavit of John P. Dearie Jr., Sirius' regulatory counsel, averring that any judgment against Sirius would be eligible for payment from the trust fund), the court nonetheless

7

concludes that Sirius has made a satisfactory showing that it maintains in a state of the United States funds or securities sufficient and available to satisfy any probable final judgment or order. Accordingly, the court shall waive any requirement that Sirius post bond in this action.

## IV. MOTION TO TRANSFER

### A. Forum Selection Clause

The court now turns to the defendant's motion to transfer this action to the Southern District of Indiana. The relevant policy contains a forum selection clause providing that venue for any action related to the policy shall be in "the Circuit and/or Superior Courts of Marion County [Indiana] and in the United States District Court for the Southern District of Indiana, Indianapolis Division (assuming that federal jurisdiction is otherwise appropriate and lawful)." (Docket No. 7 at 3-4.) Sirius seeks to enforce this provision of the policy and transfer this action to the Southern District of Indiana. Redmond contends that this forum selection clause is void because such clauses are prohibited under Wisconsin law. (Docket No. 13 at 5-11.) The defendant, in accordance with Civ. L.R. 7(a), cites only 28 U.S.C. § 1404(a) as the basis for its present motion. (Docket No. 6.) Whether Rule 12(b)(3) or 18 U.S.C. § 1406(a) remain viable means for enforcing a forum selection clause has been subject to some debate recently, see Am. Plastics Techs., Inc. v. Festo Corp., 2011 U.S. Dist. LEXIS 114274 (N.D. Ill. Oct. 4, 2011), but it is a debate the court need not wade into in light of the fact the defendant does not raise these arguments and implicitly concede that venue is otherwise proper in this district.

Although "[b]oth the Supreme Court and the Seventh Circuit hold that forum selection clauses are presumptively enforceable," RBC Mortg. Co. v. Couch, 274 F. Supp. 2d 965, 970 (N.D. Ill. 2003) (citing cases), Wisconsin law prohibits clauses in insurance policies prescribing in which court an action relating to the policy may be brought, Wis. Stat. § 631.83(3)(b). However, this statute applies to only "insurance policies and group certificates delivered or issued for delivery in

8

this state, on property ordinarily located in this state, on persons residing in this state when the policy or group certificate is issued, or on business operations in this state." Wis. Stat. § 631.01(1). This statute lists four disjunctive clauses and thus it is necessary to satisfy only one provision for Wisconsin law to apply. Casper v. Am. Int'l S. Ins. Co., 2011 WI 81, ¶73, 336 Wis. 2d 267, 800 N.W.2d 880.

Sirius contends that Wisconsin's prohibition on forum selection clauses does not apply because the policy was not delivered or issued for delivery in Wisconsin, was not for property ordinarily located in Wisconsin, was not for a person residing in Wisconsin when the policy was issued, and is not for business operations in Wisconsin. Thus, it seeks enforcement of the clause and transfer of this action to Indiana. Alternatively, it argues that the relevant policy is exempt from Wisconsin's prohibition on forum selection clauses in Wis. Stat. § 631.83(3)(b) because it was directly procured insurance under Wis. Stat. § 618.42.

The court begins with Sirius' argument that the insurance policy is exempt from Wisconsin law as directly procured insurance under Wis. Stat. § 618.42. Unlike the bond requirement discussed above, the prohibition upon forum selection clauses is contained in Chapter 631 and thus the exemption afforded under Wis. Stat. § 631.01(1)(a) is relevant. Also relevant is the exemption afforded under Wis. Stat. § 600.01(1)(b)(6). Nonetheless, both arguments fail because, as discussed above, negotiations regarding the insurance policy did not occur primarily outside of Wisconsin, as is required under Wis. Stat. § 618.42.

Having concluded that the direct procurement exception is inapplicable, the court must determine whether Wisconsin's prohibition upon forum selection clauses, Wis. Stat. § 631.83(3)(b), applies. Redmond contends that because he was a resident of Wisconsin when Sirius issued the policy, under Wis. Stat. § 631.01(1), Wisconsin's law prohibits enforcement of the forum selection clause here. (Docket No. 13 at 8-11.)

9
Case 2:12-cv-00587-AEG   Filed 08/07/12   Page 9 of 15   Document 24

Sirius replies that Redmond misreads the relevant statute. What matters, in Sirius' reading of Wis. Stat. § 631.01, is not whether Redmond was a "resident" of Wisconsin but whether Redmond was "residing" in Wisconsin when the policy was issued. After raising this distinction, the court invited Redmond's sur-reply wherein he contends that "residing in" Wisconsin, as it us used in Wis. Stat. § 631.01 means a resident of Wisconsin. Thus, as framed by the parties, the dispute comes down to whether Wisconsin's prohibition on a forum selection clause in an insurance policy applies to policies issued to "residents of Wisconsin" or only to persons "residing in Wisconsin." But in any event, the distinction is inconsequential in Redmond's view because Redmond was both a resident of and residing in Wisconsin when the policy was issued August 26 or 27, 2010. (Docket No. 20.)

The term "residing in" is arguably ambiguous as it is used in Wis. Stat. § 631.01 because it may be reasonably subject to more than one meaning. See State v. Corey J.G., 215 Wis. 2d 395, 415, 572 N.W.2d 845, 853 (1998). Case law has been silent as to the meaning of the term "residing in," as used in in Wis. Stat. § 631.01. Even the legislative history provides scarcely any indication as to why legislators chose this phrase for Wis. Stat. § 631.01(1) in 1976 as part of a substantial revision of the state's insurance laws. See 1975 Act 375, § 41. The only relevant explanatory note included in the Act states that "[s]ub. (1) applies to contract *used* in this state." Id. (emphasis added); see also Casper, 2011 WI 81, ¶78, n.6. But the statute at issue here, by its plain terms, applies to policies beyond only those used in Wisconsin. The court finds this explanatory note to be of little assistance in answering the present question because it appears partially contradictory to the plain language of the statute. If the statute was truly limited to policies used in Wisconsin, the legislature would have undoubtedly utilized this simpler term in the statute instead of the list of options it offered.

The court cannot avoid an analysis of the meaning of "residing in" by concluding that Redmond was both temporarily living in and a resident of Wisconsin. This approach presupposes at

10

least one of these interpretations is correct (not to mention that Redmond readily satisfies both). Moreover, the term "resident" is itself an ambiguous term "which may refer to a temporary sojourner as well as to one possessing a legal domicile." Germantown v. Germantown, 70 Wis. 2d 704, 716, 235 N.W.2d 486, 492-93 (1975) (quoting Smith v. Whitewater, 251 Wis. 313, 316, 29 N.W. 2d 37 (1947)). Unless the court knows what "residing in," as used in Wis. Stat. § 631.01(1), means, the question of whether Redmond was "residing in" Wisconsin at the time the policy was issued cannot be answered.

The court turns first to dictionaries and finds that the Oxford English Dictionary defines "residing" as "the action or fact of living in a particular place on a long-term basis; residence." The relevant definition of "reside" from Merriam-Webster is "to dwell permanently or continuously: occupy a place as one's legal domicile." Finally, the American Heritage Dictionary defines "reside" as "to live in a place permanently or for an extended period."

It is clear from each of these definitions that a person whose association with Wisconsin is temporary and transitive is not "residing in" the state. Rather, a long-term, if not permanent, association with a locale is required. Thus, if Redmond's connection to Wisconsin was limited to having stayed in his mother's home between August 25 and 28, (Docket No. 14, ¶9), and the fact that he used his mother's address as a more stable mailing address for important matters such as his credit card bills or insurance documents, he likely was not "residing in" Wisconsin when the policy was issued despite the fact he had spent several days in the state.

However, as Merriam-Webster's definition indicates, "reside" may also be equivalent with another legal term of art—domicile. Although the terms "domicile" and "residence" often overlap and are occasionally used interchangeably, they are not identical. When required to interpret the meaning of the statutory phrase, "the county where the juvenile resides" as it is used in the venue provision of the juvenile code, the Wisconsin Supreme Court concluded "the legislature intended

11

'resides' as used in Wis. Stat. § 48.185 (1993-94) to be defined as 'domicile.'" Corey J.G., 215 Wis. 2d 395, 414-20, 572 N.W.2d 845, 853-55 (discussing Wis. Stat. § 48.185(1) (1993-94) (now § 938.185)). Citing Black's Law Dictionary (6th ed. 1990), the court defined domicile as "living in that locality with intent to make a fixed and permanent residence." Id. at 415, 572 N.W.2d at 853. It does not change "when one lives in a place 'for mere special or temporary purposes.'" Id. at 419, 572 N.W.2d at 854 (quoting Carlton v. State Dept. of Public Welfare, 271 Wis. 465, 468, 74 N.W.2d 340 (1956)). The 9th Edition of Black's now defines domicile as "[t]he place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere." Black's Law Dictionary (9th ed. 2009). Consistent with this definition, the Wisconsin legislature defined domicile in the state's tax code as "an individual's true, fixed, and permanent home where the individual intends to remain permanently and indefinitely and to which, whenever absent, the individual intends to return, except that no individual may have more than one domicile at any time." Wis. Stat. §§ 71.01(1n), 71.22(1t).

Considering the overall context of Wisconsin's insurance law, and most-especially the command that Wisconsin's insurance laws shall be "liberally construed to achieve the purposes stated therein," Wis. Stat. § 600.12(1), the court concludes that the legislature intended "residing in," as it is used in Wis. Stat. § 631.01(1), to include not only those who dwell within the state for a long-term or extended period of time, but also, to the extent that the categories are not redundant, those who have Wisconsin as their domicile, i.e. "an individual's true, fixed, and permanent home where the individual intends to remain permanently and indefinitely and to which, whenever absent, the individual intends to return," Wis. Stat. §§ 71.01(1n), 71.22(1t).

Applying these definitions to the facts of this case, the record presently before the court is insufficient to establish that Redmond was "residing in" Wisconsin at the time the policy was

12
Case 2:12-cv-00587-AEG   Filed 08/07/12   Page 12 of 15   Document 24

issued. The relevant evidence includes the facts that Redmond identified his mother's residence in Delafield as his "Address of Residence" and the billing address for his credit card on the renewal form, (Docket No. 7-1), he states he was residing at his mother's house between August 25 and 28, (Docket No. 14, ¶9), he returned to Wisconsin after May 20, 2011, (Docket No. 14, ¶11), he had a business office in Wisconsin in September, 2008, (Docket No. 22, ¶3), he had a "residence" in Wisconsin in 2006, (Docket No. 22, ¶4), he had an "address" in Wisconsin in 2007, 2008, and 2009, (Docket No. 22, ¶5). Moreover, Redmond takes pains to emphasize his lack of connection to Vermont, where he spent the 2010-11 academic year, (Docket No. 14, ¶¶12-20). But his lack of a connection to Vermont does not necessarily lead to the conclusion that he was domiciled in Wisconsin, as opposed to anywhere else in the world. There is no indication, for example, that he did in Wisconsin all the things he declares he never did in Vermont.

There are other hints as to Redmond's connections to Wisconsin, (see Docket No. 18-1), such that it might be possible to conclude that he was at one time domiciled in Wisconsin. Although an individual does not lose a prior domicile until a new one is acquired so that a person is never without a domicile, In re Estate of Tressing, 86 Wis. 2d 502, 510, 273 N.W.2d 271, 277 (1979) (citing Will of Eaton, 186 Wis. 124, 133, 202 N.W. 309 (1925)); see also Estate of Daniels, 53 Wis.2d 611, 193 N.W.2d 847 (1972), and thus Redmond may have retained a Wisconsin domicile on August 26, 2010 despite his prior travels, the court nonetheless lacks sufficient competent evidence to support this conclusion. It is clear, however, that Redmond spending a few days at his mother's home in late-August, 2010, standing alone, is insufficient to support a conclusion that Redmond was "residing in" Wisconsin when the policy was issued.

Because the parties framed their positions largely in reliance upon their respective understandings of the meaning of "residing in," the court shall withhold decision on the present motion until after the court affords the parties the opportunity to present appropriate evidence to

indicate whether the plaintiff was "residing in" Wisconsin, as that term has been defined herein, when the policy was issued. If the parties remain in disagreement as to whether Redmond was residing in Wisconsin, the court shall discuss the procedure to obtain such evidence with the parties at the conference scheduled for August 15, 2012, which shall now occur in court at 10:00 AM.

### B. 28 U.S.C. § 1404(a)

The court shall likewise withhold resolution of the defendant's motion to transfer on what it presents as the alternate grounds of forum non conveniens under 28 U.S.C. § 1404(a). The defendant's motion to transfer venue pursuant to the forum selection clause is, in actuality, a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) in which "[t]he presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 28-29 (1988); see also In re LimitNone, LLC, 551 F.3d 572, 575 (7th Cir. 2008); Am. Plastics Techs., Inc., 2011 U.S. Dist. LEXIS 114274, *7. Agreeing to a valid forum selection clause effectively eliminates convenience of the parties as a factor in the § 1404(a) analysis. See Northwestern Nat'l Ins. Co. v. Donovan, 916 F.2d 372, 378 (7th Cir. 1990). Notwithstanding an enforceable forum selection clause, a motion to transfer to the forum designated in the parties' agreement may still be denied if a balancing of the other § 1404(a) factors dictates that outcome. Id.

Because the forum selection clause will necessarily be a substantial consideration in the court's weighing of whether transfer to the Southern District of Indiana is appropriate, the court shall defer its analysis until it is able to resolve the remaining questions regarding the enforceability of the forum selection clause.

**IT IS THEREFORE ORDERED** that the plaintiff's motion to strike and to require the defendant to post bond, (Docket No. 10), is **denied**.

**IT IS FURTHER ORDERED** that the court shall discuss further proceedings in accordance with this order with respect to the defendant's motion to transfer, (Docket No. 6), at the scheduling conference currently set for **August 15, 2012**. Due to the nature of the matters to be discussed, this conference is reset to **10:00 AM** and is converted from a telephone conference to an in-person conference in Courtroom 254 of the United States Courthouse, 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202.

Dated at Milwaukee, Wisconsin this 7th day of August, 2012.

_____
AARON E. GOODSTEIN
U.S. Magistrate Judge